EASTON v. STROTHER & CONKLIN ET AL.

1. **Promissory Note:** AGAINST PARTNERSHIP: PURCHASE BY PARTNER. A partner cannot, by purchase, become the owner of an outstanding note against the partnership; and if, in an attempted compromise of a firm note by one partner, · there was a mutual mistake as to the amount due, the payment was good only for the amount paid, and not as full satisfaction of the note.

2. ———: EVIDENCE: INDORSERS: ˙ SURRENDER OF SECURITY. Evidence considered; *held* insufficient to show a surrender by the indorsers, of certain security held by them, upon the belief of payment and discharge of the note.

*Appeal from Howard Circuit Court.*

SATURDAY, DECEMBER 17.

ACTION to recover an alleged balance upon a promissory note. The petition avers that the note was executed by the defendants, Strother & Conklin, to the defendants, Day Bros., and indorsed by them to the plaintiff; that it was made May 10, 1877; that it was drawn for $1,400, and bears ten per cent interest. The petition admits a payment of $1,475, as made December 20, 1878.

The defendants, Strother & Conklin, for answer, aver that the note was purchased December 20, 1878, by W. Strother, a member of their firm for $1,475, and was delivered to him, and that he still owns the same.

They also aver in a separate count that the note is fully paid.
· To the count in the answer alleging the purchase, the plaintiff demurred upon the ground that the count showed that Strother was purchasing his own debt, and on the further ground that he did not pay the amount due on the note. The

court sustained the demurrer, and the defendants, Strother & Conklin, excepted.

The defendants, Day Bros., for answer, aver that when they took the note of Strother & Conklin they took full security from them; that Strother & Conklin had a settlement of the note with the plaintiff, and that the note was surrendered to them by the plaintiff; that upon being informed of the settlement, and surrender, they surrendered the security held by them.

There was a trial without a jury, and judgment was rendered for the plaintiff for the amount claimed, $187.22. The defendants appeal.

*H. T. Read*, for appellants.

*Brown & Wellington*, for appellee.

ADAMS, CH. J.—I.  The first question raised is as to the sufficiency of the count of Strother & Conklin's answer setting up a purchase of the note by Strother. It was Strother's duty to take up the note for the firm by payment or compromise as best he could. The amount paid by him became a charge in his favor against the firm. This was all that he was entitled to. He could not by purchase become the owner of a note against the firm. The rule contended for by the appellants would afford a direct temptation to partners to attempt to evade their duty in respect to the firm paper, and speculate therein by first depreciating it, and then buying it. The count of the answer, then, was not good as showing a purchase. We have had some doubt as to whether it should not have been held good as showing a compromise. It shows that Strother & Conklin were not able to pay their debts in full. The appellants contend that when the maker of a promissory note is insolvent, and compromises with the holder, and takes up his note, he thereby becomes discharged thereon, and that the creditor cannot be allowed to maintain that the discharge was invalid for

<span style="font-size:smaller">1. PROMISSO-RY note : against part-nership: pur-chase by partner.</span>

want of consideration. But if we should concede that this is so, we should feel constrained to hold that the demurrer was properly sustained. The count demurred to does not expressly aver a compromise, but a transaction of an entirely different character, and one which involved very different results. It was the plaintiff's right to have the issues properly defined, and if the defendants relied upon showing a compromise, to have such issue directly tendered. The plaintiff's theory was that there was a mutual mistake as to the amount due upon the note, and that it was only by reason of such mistake, that so small an amount as $1,475 was received and the note surrendered. If there was such mutual mistake, the attempted compromise was invalid. The case does not differ materially from a case where the maker of a note attempts to pay the same in full, but by mistake in computation, pays less than the full amount. Such payment is good only for the amount paid.

II. Upon the trial the evidence showed very clearly that the amount computed by the parties to be due upon the note was $1,487.16. From that amount the plaintiff threw off $12.16. The next day he discoverd, as he claims, that they made a mistake of one year's interest, to-wit, $140, and he so notified all the parties immediately. Evidence was introduced against the objection of the defendants tending to show such mistake. The objection was based upon the fact that the plaintiff did not allege such mistake in his petition.

But we think it was competent to show it as against the allegation of Strother & Conklin that the note had been fully paid, and as against the allegation of Day Bros. that the note had been settled.

III. The allegation of Day Bros. that they surrendered security to the amount of the note is not, we think, proven.

2. ———: evidence: indorsers: surrender of security.

Day Bros., it appears, were owners of certain stock in an elevator. This stock they sold to Strother & Conklin, and for it the note in question was

given. It was understood that the stock in question was to stand in the name of Day Bros. until the note should be paid. It does not appear that Day Bros. ever had any certificate in their possession. A certificate was made out, but it remained in the hands of the secretary of the company. There is no evidence that it was ever indorsed or otherwise assigned. There was introduced in evidence a stub of certificate No. 7 of stock of City Elevator Co. of Cresco. That indicated that a certificate for thirty-two shares had been issued to Day Bros. Upon the stub also appeared a written memorandum in these words: "Transferred to Strother & Conklin." There was evidence that this memorandum was made by the secretary of the company, and was made immediately after the settlement. This, so far as we can see, constitutes the sole evidence of transfer or surrender. It is true C. Day, one of the firm of Day Bros., testified that he knew that the note had been paid and surrendered, and that shortly after he delivered the stock. But he says himself that the stock was in the hands of the president or secretary of the company. By stock we understand him to mean the certificate of the stock, and he admits in effect that he did not indorse or assign the certificate. He says that he thinks he did not sign any paper other than a receipt acknowledging payment for the stock.

Neither the articles of incorporation nor the by-laws of the elevator company were introduced in evidence, and we are not shown by what method the stock was to be transferred. But transfers are usually made, we believe, where a certificate has been issued, by some indorsement or assignment of the certificate, and surrender thereof to the company, and issuance of a new certificate to the assignee. The certificate issued to Day Bros. appears to be still outstanding, unindorsed, and unassigned. While this is so, we do not see how the company could properly issue a certificate of the same stock to another person. Strother & Conklin then had obtained no legal title to the stock, nor could they set up any equitable

title as derived through any verbal understanding based upon the supposed payment for the stock, if the fact was that such payment, by reason of a mistake, had not been made.

In our opinion, there was no error in the rulings of the court.

AFFIRMED.