CHARLES D. CARPENTER v. JOHN GREENOP AND ROBERT A. LAVERY.

*Partnership—Bills and notes—Indorsement after maturity.*

1. The indorsee of a negotiable promissory note, given by a copartnership to one of its members for a loan made by him to the firm, and purchased in good faith, but after maturity, may

maintain a suit thereon against the firm, it not appearing that said partner was in any way a debtor to the firm when the note was transferred, or that there were any equities existing against him which did not exist when the note was made.

2. The following general propositions are summarized from the opinion of Mr. Justice CAMPBELL:

*a*—While there is a difficulty in a suit at law in the name of a party against himself, yet, if this is the only difficulty, it goes only to the form of the remedy, and not to its existence.

*b*—There never was any legal or equitable reason why a partner should not have specific dealings with his firm, and unless these dealings, from their nature, are intended to go into the general accounting, and wait for their adjustment till dissolution, they give a right to have a remedy according to their exigency. The only reason why they must, under the old practice, be prosecuted at equity instead of at law, arose from the necessity at law of having plaintiffs capable of suing the defendants. In such a case the failure of a remedy at law justified a resort to equity. But equity could grant relief in such cases, and under our present rules there can be no difficulty at law.

*c*—Where partners have seen fit to deal with each other without reference to the final accounting, the transaction is not subject to the necessity or delay of such an accounting.

*d*—It is elementary doctrine that negotiability does not cease when paper matures. It is only subject to such equities as exist against the paper at the date when it is negotiated, and the equities which affect the indorsee are only such as attach to the note itself, and do not include collateral matters.

*e*—That a partner *himself* may have a remedy of some kind, where the transaction is such as to be separated from the general partnership accounting, does not seem to be questioned, and the fact, which is referred to in all the books, that an accounting can only be had at the close of the business, indicates as clearly as anything can that either a partner can make no separate contract with his firm at all, or else there must be some means of enforcing it. A contract that cannot be enforced is nugatory.

Error to Mecosta. (Palmer, J.) Argued April 3, 1889. Decided April 24, 1889.

*Assumpsit.* Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Glidden & Bates,* for appellant, contended:

1. The reason of the rule that one partner cannot sue another is because such a suit would make him both plaintiff and defendant; citing 1 Pars. Cont. 164; *Davis v. Merrill,* 51 Mich. 480; but this reason does not exist as to his assignee. It does not even involve an accounting as between the individual members of the firm, but only a defense that the firm might have; citing *Bates v. Lane,* 62 Mich. 132.

2. The loaning of this money by Lavery was on an express agreement that it should not enter into the partnership account, and he took the firm note instead of credit upon his account with the firm, which can alone be used as an offset against the note, but the state of accounts as between the individual partners could not be litigated or considered; citing *Kinney v. Robison,* 52 Mich. 389.

*M. Brown* and *Frank Dumon,* for defendants, contended:

1. Lavery, the payee, could not have maintained an action upon the note against the firm of which he was a member, because the claim arose out of the partnership dealings, and the consideration for which the note was given was money put into the firm business by Lavery, and there has been no settlement of such business between the partners. The remedy of the payee would have been in equity, if anywhere; citing 1 Pars. Bill & N. 136, 137; *Davis v. Merrill,* 51 Mich. 481; *Learned v. Ayres,* 41 Id. 677; *Crow v. Green,* 111 Penn. St. 637; *Bishop v. Bishop,* 54 Conn. 232; *Smith v. Allen,* 18 Johns. 245; *Arnold v. Arnold,* 90 N. Y. 580; *Gomersall v. Gomersall,* 14 Allen, 60; *Wiggin v. Cumings,* 8 Id. 253; *White v. Harlow,* 5 Gray, 463; *Fisher v. Sweet,* 67 Cal. 228; *Lang v. Oppenheim,* 96 Ind. 106; *Dowling v. Clarke,* 13 R. I. 134; *Ivy v. Walker,* 58 Miss. 253; *Morin v. Martin,* 25 Mo. 360; *Burns v. Nottingham,* 60 Ill. 531; *Hammond v. Hammond,* 20 Ga. 556; *Harris v. Harris,* 39 N. H. 45; *Ordiorne v. Woodman,* Id. 541.

2. If Lavery could not have maintained an action upon the note, neither can the plaintiff, who stands in his shoes; citing *Davis v. Merrill,* 51 Mich. 480; *Learned v. Ayres,* 41 Id. 677; *Stoddard v. Wood,* 9 Gray, 90; 1 Edw. Bills & N. 287; *Spinning v. Sullivan,* 48 Mich. 8, 9; *Thompson v. Lowe,* 111 Ind. 272; *Tipton v. Nance,* 4 Ala. 194; *Houston v. Brown,* 23 Ark. 333; *Hill v. McPherson,* 15 Mo. 209; *Couillard v. Eaton,* 139 Mass. 105.

CAMPBELL, J. Plaintiff purchased in good faith, but

after maturity, a note of John Greenop & Co., payable
to the order of Robert A. Lavery, and indorsed by Lavery.
Lavery was a member of the firm of John Greenop &
Co., and made the note, with Greenop's consent, for money
lent by Lavery to the firm. The note was dated January
21, 1883, payable in six months. It was transferred to
plaintiff in 1884 while the firm was still in business, and
about a year before it ceased doing business. There was
no evidence of the state of accounts, or that Lavery was
in any way a debtor to the firm when the transfer was
made, or that there were any equities existing against him
which did not exist when the note was made.

The court below held that plaintiff could not recover.
The reason assigned was that the note could not be trans-
ferred after maturity, so as to enable the indorsee to sue
upon it, if suit could not have been brought by the
assignor, and that Lavery could have brought no suit on
it. The decision also seems to have been based partially
on the idea that a partner can have no dealings with
his firm which are not subject to the final accounting,
and that the equities of such an accounting attach to
such claims as he may hold against the firm.

I do not think this doctrine is tenable. It certainly has
not been directed in this Court. The only case that is
seriously claimed as bearing in that direction is *Davis v.
Merrill*, 51 Mich. 480 (16 N. W. Rep. 864). That case
has no resemblance to this. One member of the firm,
named Eastwood, received from the firm in October, 1874,
a note due in one month after date. In 1875 the firm
was dissolved, and the affairs were put into the hands of
George W. Merrill, one of the partners, to wind up.
Merrill's credit in the firm accounts was larger than East-
wood's, and Eastwood had been credited on the books
with the amount of the note, which had never been pre-
sented or demanded during the period after dissolution.

In May, 1881, Eastwood, who had lost the note by acci-
dental fire in January of the same year, assigned to the
plaintiff in general terms whatever claims he had against
the firm, with no reference to the note as such. It is
plain enough that there could have been no recovery in
such a case. Even had the note been described, the stat-
ute does not authorize the assignee of a negotiable note,
who is not an indorsee, to sue in his own name on it.
But, furthermore, there was no attempt to transfer the
note as such. The assignment was one which transferred
nothing but Eastwood's claims generally against the com-
pany, and must therefore be_ subject to the partnership
settlement. There was no firm in existence for nearly six
years before the assignment.

In the present case the note was transferred by regular
indorsement a considerable time before the firm went out
of business. It was due already as an independent claim
against the firm for money lent, and not for money
invested in the business. · It was not by its terms, or by
the nature of the transaction, to be postponed until the
future dissolution of the concern, and there is no account-
ing in advance of dissolution, unless by agreement.

While there is a difficulty in a suit at law in the name
of a party against himself, yet, if this is the only diffi-
culty, it goes only to the form of the remedy, and not
to its existence. There never was any legal or equitable
reason why a partner should not have specific dealings
with his firm as well as any other person; and unless
those dealings, from their nature, are intended to go
into the general accounting, and wait for their adjust-
ment till dissolution, they give a right to have a remedy
according to their exigency, and can be dealt with like
any other claims. The only reason why they must, under
the old practice, be prosecuted at equity instead of at
law, rose from the necessity at law of having plaintiffs

capable of suing the defendants. In such a case the failure of a remedy at law justified a resort to equity. But equity could grant relief in such cases, and under our present rules there can be no difficulty at law. Where partners have seen fit to deal with each other without reference to the final accounting, the transaction is not subject to the necessity or delay of such an accounting.

This note was by its terms negotiable. It is elementary doctrine that negotiability does not cease when paper matures. It is only subject to such equities as exist against the paper at the date when it is negotiated. And the equities which affect the indorsee are only such as attach directly to the note itself, and do not include collateral matters. This is very old doctrine, and is laid down without qualification. Lord Tenterden and his associates, speaking through Mr. Justice Bayley in *Burrough v. Moss*, 10 Barn. & C. 558, refer to the subject in this way:

"This was an action on a promissory note, made by the defendant, payable to one Fearn, and by him indorsed to the plaintiff after it became due. For the defendant it was insisted that he had a right to set off against the plaintiff's claim a debt due to him from Fearn, who held the note at the time when it became due. On the other hand, it was contended that this right of set-off, which rested on the statute of set-off, did not apply. The impression on my mind was that the defendant was entitled to the set-off, but, on discussion of the matter with my Lord Tenterden and my learned brothers, I agree with them in thinking that the indorsee of an overdue bill or note is liable to such equities only as attach on the bill or note itself, and not to claims arising out of collateral matters. The consequence is that the rule for reducing the damages in this case must be discharged." See Chit. Bills, 220; Story, Bills, § 220; *Leavitt v. Putnam*, 3 N. Y. 494; *Baxter v. Little*, 6 Metc. 7; and cases in note to page 275 of Big. Cas. B. & N. 437; 3 Kent. Comm. 91, and notes.

It was not shown, and cannot be claimed on this rec-

ord, that there was any unfairness or want of consideration, or payment, or any other matter bearing on the note in this case, when it was transferred, and in such case it can make no difference when it was transferred. It continued to be a valid note, and capable of transfer by indorsement. That a partner himself may have a remedy of some kind, where the transaction is such as to be separated from the general partnership accounting, does not seem to be questioned. Mr. Collyer refers to several illustrations, in book 2, chap. 3, Partn. (2d ed.) Judge Story, in his work on Partnership, § 222 *et seq.*, indicates very clearly the right of a partner to relief in the case of contracts as a creditor or otherwise with his firm; and the fact, which is referred to in all the books, that an accounting can only be had at the close of the business, indicates as clearly as anything can that either a partner can make no separate contract with his firm at all, or else there must be some means of enforcing it. A contract which cannot be enforced is nugatory. Partnerships are often made for long terms of years. Members become managers on salaries which are payable at regular intervals, and they frequently furnish articles for which they are entitled to pay. No one doubts their rights to pay themselves out of moneys in their charge; but all do not have this opportunity, and to hold that a person must, if his copartners will not advance him what is due, wait the whole term of business for payment, is not reasonable or maintainable.

A very thorough discussion of the various questions is found in the early case of *Smith v. Lusher*, 5 Cow. 688, where the judges of the supreme court, and the chancellor and other members of the court for the correction of errors, dealt with the subject in a very exhaustive way, with entire unanimity. The cases of *Nevins v. Townsend*, 6 Conn. 5, and *Gray v. Bank*, 3 Mass. 364, are also some-

what pertinent. I have found no authority which sanctions the doctrine that plaintiff was precluded by the fact that the note was past due from taking the title by indorsement, and none that allows a note to be affected by collateral equities. When this note was indorsed there could be no accounting, because the firm continued its ordinary business. The debt was for a loan, and not for investments in the capital. It was distinct from the mutual relations among the partners, and stood as a separate contract.

I think there was nothing to bar recovery, and that the judgment to the contrary should be reversed.

CHAMPLIN, MORSE, and LONG, JJ., concurred with CAMPBELL, J.

SHERWOOD, C. J., *(dissenting)*. The defendants in this case were partners and did business under the firm name of John Greenop & Co. Lavery loaned to the firm $600, and took back a note signed by the firm therefor, payable to his order in six months, with interest at 8 per cent., at Northern National Bank, Big Rapids, Mich. The note was dated January 21, 1883. After the note became due the payee, Lavery, sold the note, and indorsed it over to the plaintiff, who now brings suit upon it against the members of the firm; the firm being dissolved, and no settlement of the partnership matters ever having been made between the copartners. The declaration was in *assumpsit* upon the common counts and the note. Defendant Lavery did not appear, and was defaulted. Greenop appeared, pleaded the general issue, and denied the execution of the note under oath. On the trial, the execution of the note and the plaintiff's ownership thereof were duly proved.

The counsel for Greenop insisted upon the trial of the cause that the plaintiff, being an assignee of the note

after it became due, could not maintain this suit upon it; that the note grew out of the partnership transactions of the firm; that no suit at law could have been brought upon it by Lavery while he owned it; that the plaintiff's interest therein is subject to all the equities of the original parties to the note, and that Lavery could not sue himself, neither could his assignee sue the firm. The circuit judge held in accordance with the view of defendants' counsel, and directed the verdict for the defendants. This, I think, was correct, and that the case is so nearly like that of *Davis v. Merrill*, 51 Mich. 480 (16 N. W. Rep. 864), it should be ruled by the principles therein laid down, and the judgment should therefore be affirmed.