THOMAS W. JENNINGS AND FRANK. D. KIMBALL, APPELLANTS, *v.* O. P. PRATT, L. D. KINNEY, MILANDO PRATT, SIMON BAMBERGER, HUDSON SMITH, HENRY BARNES, JOHN BECK, AND SPENCER CLAWSON, RESPONDENTS.

PLEADINGS — OBJECTIONS TO — FOR SUFFICIENCY — WHEN MUST BE RAISED.  PROMISSORY NOTE — ACTION ON — BY GUARANTORS — NON-SUIT — WHEN IT SHOULD BE DENIED.  ACTION BY PARTNER AGAINST HIS FIRM — WHEN IT WILL LIE WITHOUT ACCOUNTING.

1. *Pleadings — Objections to — For Sufficiency — When Must be Raised.*
Objections to the sufficiency of pleadings can not be raised for the first time on appeal, and will not be considered in determining a question of non-suit.

2. *Promissory Note —Action on — By Guarantors — Non-suit — When It Should Be Denied.*
Plaintiffs brought this action on a note of defendants executed as N. S. L. Association, to one.P., and which plaintiffs claim to have paid as guarantors, and there being evidence that plaintiffs had on a separate instrument guaranteed the note of defendants and had afterward paid the same, a motion for non-suit on the ground of failure of proof should have been denied.

3. *Action by Partner against His Firm — When It Will Lie without Accounting.*
While it is true that one partner can not sue his firm at law for a demand arising out of partnership business, without first having had an accounting, yet a partner may transact business with his firm the same as any other person, and when it appears from the evidence that it was not intended as partnership business, no accounting is necessary, and an action at law may be maintained.

(Decided March 24, 1899.)

Appeal from the Third District Court, Salt Lake County, Hon. A. N. Cherry, *Judge.*

19 Utah—9

Action to recover the amount of a promissory note which plaintiffs allege was executed by the defendants as an association known as the North Salt Lake Association, to one Lorenzo Pettit, and by him afterward, for a valuable consideration, indorsed in due course of business, before maturity to the plaintiffs, who, it is alleged, are now the owners and holders thereof.

From a judgment of non-suit plaintiffs appeal. *Reversed.*

*Frank Pierce, Esq.*, for appellants.

If a person attends and participates in a meeting while a matter is under consideration, he is held, although he voted against it. Mechem on Agency, Sec. 73, last paragraph; *Eichbaum* v. *Irons*, 40 Am. Dec., 540.

The plaintiffs guaranteed the payment of the note, and took is up before maturity, and are therefore entitled to the same rights that Lorenzo Pettit, the payee, had.

A guarantor or surety, on paying a note, is entitled to subrogation. 2 Brandt on Suretyship, Sec. 298; Harris on Subrogation, Secs. 22, 414.

A guarantor who pays the note is entitled to it for his own use when he pays it to the holder, and in so doing he becomes vested with the same rights which the payee had against the maker. 2 Daniel on Negotiable Instruments, Sec. 1758; *Putnam* v. *Tash*, 12 Gray, 121; 2 Daniel on Negotiable Instruments, Sec. 1780 a.; *Granite* v. *Fitch*, 145 Mass., 567; *Teberg* v. *Swenson*, 4 Pac. Rep., 93; *Waldrip* v. *Black*, 74 Cal., 409.

This suit is properly maintainable because the intention of the parties to keep this transaction out of partnership business is clearly manifest. *Carpenter* v. *Greenop*, 74

Mich., 664; S. C., 16 A. S. R., 664; *Bull* v. *Coe*, 11 A. S. R., 235; *Bank* v. *Delafield*, 126 N. Y., 410.

Where evidence tends to show a cause in all its parts, though slight, inclusive, and far from satisfactory, a non-suit should be denied. *Cunningham* v. *Railway*, 4 Utah, 206; *Trihay* v. *Lead Mine*, 4 Utah, 468; *Lowe* v. *City*, 13 Utah, 91.

*C. W. Morse, Esq.*, for respondent.

Simon Bamberger, one of the defendants, was president of the North Salt Lake Association. Plaintiffs dismissed this action as to him. A dismissal as to one effects a discontinuance of the entire action, and entitled the other defendants to a non-suit. Enc. of Pleading & Prac., 857 and cases cited.

BARTCH, C. J.

This action was brought to recover the amount of a promissory note which the plaintiffs allege was executed by the defendants as an association, known as the "North Salt Lake Association," to one Lorenzo Pettit, and by him afterward, for a valuable consideration, indorsed, in due course of business, before maturity, to the plaintiffs, who, it is alleged, are now the owners and holders thereof. At the trial, after the plaintiffs rested, on motion of defendants, a judgment of non-suit was entered, and this appeal is from that judgment. The complaint stated a cause of action on the note in common form, but the trial appears to have been conducted on the theory that the plaintiffs claimed to be guarantors and that they had paid the note to the payee in extinguishment of their obligation as such, and therefore were entitled to be subrogated to the rights of the payee.

Counsel for the respondents insists that the non-suit was properly granted, because the allegations in the complaint were not sufficient to entitle the plaintiffs to recover under the doctrine of subrogation. To this it must be answered that no such objection to the pleadings was made at the trial, nor in the motion for a non-suit, and being thus made for the first time, in this court, it comes too late, and can not be regarded as effective on this appeal. We have noticed no objections in the record to the introduction of evidence at the trial respecting a guaranty and right of subrogation, founded on insufficiency of allegations in the complaint, nor has our attention been called to any. Nor does it appear that in the court below there was any suggestion of variance between the proof and the pleadings. Having failed to raise such questions in the trial court where ample power existed to amend, and having proceeded to trial on the merits, we must assume that the objections to the pleadings were waived. It would be unjust to permit either party to a suit to try the case on the merits without objection to the pleadings, and then after judgment and in the appellate court make the point for the first time that the pleadings were defective.

In *Tyng* v. *Commercial Warehouse Co.*, 58 N. Y., 308, it was said: "No question appears to have been made during the trial in respect to the production of evidence founded on any notion of variance or insufficiency of allegation on the part of the plaintiff. Had any such objection been made, it might have been obviated by amendment in some form or upon some terms, under the ample powers of amendment conferred by the Code of Procedure. It would, therefore, be highly unjust, as well as unsupported by authority, to shut out from consideration the case, as proved, by reason of defects in the statements of the complaint. Indeed, it is difficult to

conceive of a case in which, after a trial and decision of the controversy, as appearing on the proofs, when no question has been made during the trial in respect to their relevancy upon the pleadings, it would be the duty of a court, or within its rightful authority to deprive the party of his recovery on the ground of incompleteness or imperfection of the pleadings." *Wasatch Min. Co.* v. *Crescent Min. Co.*, 148 U. S., 293.

We must, therefore, determine the question of non-suit by reference to the proof, regardless of whether or not the pleadings are defective. From the evidence it appears that the defendants, with others, formed the associations in whose name the note in question was executed. Simultaneously with the delivery of the note, a written instrument, purporting on its face to be an agreement for a guaranty, but at the trial having been recognized as a guaranty, was executed to defendant, Hudson Smith, by the plaintiffs, and this was indorsed by Smith as treasurer, he being the treasurer of the association. Respecting this transaction, the witness Jennings, testifying for the plaintiffs, said, "The North Salt Lake Association was raising money to pay for land upon which to locate the copper plant in North Salt Lake; the association was to buy the land and give it to the Copper Company as a site upon which the company was to erect its works. The land was purchased of Lorenzo Pettit, the man to whom the note ran. The Association was short $950, and they got me to go security for Mr. Pettit, and they agreed to pay me back or pay the note before it was due; Exhibit 'B,' the guaranty was signed and executed in Hudson Smith's office in the Commercial Block on the 25th day of March, 1893, at which time there were probably twenty persons present; Hudson Smith, O. P. Pratt, L. D. Kinney, and others were present; those who were present said they would pay the note,

and I would n't have to pay it. They agreed if I would sign the guaranty they would raise the money, and I would n't have a dollar of it to pay and it would all be settled; all of them agreed to it,— the whole roomful of them. None of those who were present disagreed. The $950 which I guaranteed was the same $950 which is rep-resented by the note. I furnished the money and paid the note to Mr. Pettit according to guaranty. I paid $950 and interest.

"I did n't have any connection with the North Salt Lake Association or the location of the copper plant, except I paid $2,500 in cash as a subscription outside of this $950 for the location of the plant; I paid it through the North Salt Lake Association.

"All those who were present (referring to the meeting in Hudson Smith's office) said that they would pay the $950 that was short on or before it became due, if I would guaranty it for ninety days; the guaranty and the note were delivered together. I would n't have paid the note if I had n't signed the guaranty."

The witness Pratt who signed the note as Secretary of the Association, testified: "I am familiar with the note. The signature was written by myself in Hudson Smith's office on the day when it bears date; there were present Hudson Smith, myself, L. D. Kinney, F. D. Kinney, Thomas W. Jennings, John M. Cannon, Mr. Pettit, and others. The matter under discussion was the getting a deed for the copper plant site from Mr. Pettit. The Association had not raised enough means to pay Mr. Pettit by $950; we could not get the deed from Mr. Pettit until we made some provision for securing him for $950. Those present agreed to meet that amount and make the note good. The note was drawn up, and I was requested by the gentlemen present to sign it. Mr. Smith was one

of those present.    The note was executed in the presence
of the meeting; it was handed to Mr. John M. Cannon
who represented Mr. Pettit."

Similar    testimony    was    given    by    other    witnesses.
Clearly this evidence, if true, tends to show a guaranty
by the appellants and an agreement on the part of the
defendants present at the meeting and participating,
to hold the appellants harmless because of the guaranty.
It also shows payment by the guarantors, assuming,
as the evidence indicates, that the instrument signed
by the appellants was a guaranty, and a failure to pay
by the respondents.    The evidence is of such a char-
acter that, if true, it is difficult to see how the court could
hold that the plaintiffs had failed to make out a *prima
facie* case, and "when a motion for a non-suit is inter-
posed, it becomes the duty of the court to assume as true
all facts which could be properly found by a jury from the
evidence, and then, after giving the plaintiff the benefit of
every fair and legitimate inference and intendment which
can arise from the evidence, in order that the court may
grant the motion, it must appear that the plaintiff still has
failed to prove his case."    *Lowe* v. *Salt Lake City*, 13
Utah, 91.

Tested by this principle, the evidence clearly presents
such a case as precludes a judgment of non-suit on the
ground of failure of proof.    It is further insisted, how-
ever, that as both plaintiffs were present at the meeting
when the transactions which caused this controversy took
place, and since one of them, as is maintained, was a
member of the association, they can not recover in this
action, and that their only remedy, if any, is suit for con-
tribution.    The evidence seems to be against this conten-
tion.    The facts established, assuming the proof to be
legitimate, in the absence of proper objections to the

pleadings, and true, indicate an intention of the parties to keep the transaction out of partnership business, if a partnership actually existed. The rule is doubtless well settled that, in the absence of a settlement of accounts, one partner can not sue another at law upon a demand which has grown out of a partnership transaction; but where the claim of one partner against co-partners arises out of a transaction which is not properly a partnership matter, the rule does not apply. Nor is there any sound reason why a partner should be prohibited from transacting business with his firm the same as any other person, and when the transaction is not intended as a part of the partnership business, or to be accounted for as such, no reason is apparent why such partner should not be entitled to the same remedy as another individual would be.

" While there is a difficulty in a suit at law in the name of a party against himself, yet, if this is the only difficulty, it goes only to the form of the remedy, and not to its existence. There never was any legal or equitable reason why a partner should not have specific dealings with his firm as well as any other person; and unless those dealings, from their nature, are intended to go into the general accounting and wait for their adjustment till dissolution, they give a right to have a remedy according to their exigency, and can be dealt with like any other claims. The only reason why they must, under the old practice, be prosecuted at equity instead of at law arose from the necessity at law of having plaintiffs capable of suing the defendants. In such a case the failure of a remedy at law justified a resort to equity. But equity could grant relief in such cases, and under our present rules there can be no difficulty at law. Where partners have seen fit to deal with each other without reference to the final accounting, the transaction is not subject to the necessity or delay

of such an accounting." *Carpenter* v. *Greenop*, 74 Mich., 664; *Bull* v. *Coe*, 77 Cal., 54; *Bank of B. N. A.* v. *Delafield*, 126 N. Y., 410; *Course* v. *Prince*, 12 Am. Dec., 649–651.

On the assumption that the facts established by the evidence in the case at bar are true, it seems clear that the transaction which culminated in the execution of the note, and instrument referred to as a guaranty, was not intended as partnership business, and therefore, this case does not fall within the rule above referred to that one partner can not sue his firm at law for a demand arising out of partnership business, without first having had a settlement of accounts.

From the foregoing considerations, we are of the opinion that the court was not warranted in granting the nonsuit. Having reached this conclusion, it is not deemed necessary to discuss any of the other points presented. The case is reversed, with costs, and remanded with directions to the court below to grant a new trial and permit either or both parties to amend their pleadings if they desire to do so.

MINER, J., and BASKIN, J., concur.