## GIDEON P. HOPKINS ET AL. *vs.* MATTIE ADEY.

*Partnership—Loan of Money by one Partner to Another, Used in Paying Partnership Debts.*

A note given for a loan of his individual money by one partner to another, to be used by the latter in paying the partnership debts, is valid and enforceable by action at law against the borrower and a co-maker of the note.

Appeal from the Baltimore City Court (RITCHIE, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*William Colton* and *Benj. Rosenheim* for the appellant:

Briefly stated, the case is as follows: A and B are jointly indebted to C and others in divers sums of money. A hands B two thousand dollars ($2,000), upon the express understanding and agreement that so much of this amount as may be necessary for that purpose shall be applied by B to the satisfaction and payment of the claims of C and others; nearly the whole two thousand dollars is accordingly thus applied by B; upon a suit by A against B it is held that A may recover the entire two thousand dollars, and that no account is to be taken of the portion of the two thousand dollars thus paid out and expended by B with A's express consent and under her express direction, for the joint benefit of herself and B. The actual case differs from this briefly formulated statement only

HOPKINS *vs.* ADEY.

in the immaterial details, that the cause of action is a promissory note, for which, according to the undisputed testimony in the case, there is no consideration other than such payment by A to B of the sum of two thousand dollars, to be thus applied and accounted for, and that the person sued is not B, but a virtual endorser for B.

It may be shown by way of defense that no loan was in fact made or that the defendant is not under any legal obligation to refund the money advanced to him. *Johnson* v. *Jennings*, 10 Gratt. 1. It is not necessary in the present form of action (*assumpsit*) to plead payment or satisfaction specially. Under the general issue plea, payment or part payment, may be shown, and in general any and every defense may be set up tending to show that the plaintiff's claim is, in whole or part, unfounded; and this applies equally to express and implied *assumpsit. Poe's Pleading*, 608. Treating this present action, as substantially an action for the recovery of an alleged loan of two thousand dollars, there can be no doubt that the appellant is entitled to show that he is under no obligation to repay to the plaintiff the entire sum sued for, because the maker or borrower has made virtual payment of nearly the entire amount, that is, paid out and expended the money as expressly agreed to and directed by the plaintiff. *Fall* v. *Johnson*, 8 S. Dak. 163. The defendant is entitled to show the purpose for which negotiable paper was given, and that there has been a failure of consideration, or that the money has been expended for the benefit of the plaintiff. *Catlin* v. *Birchard*, 13 Mich. 112; *Malz* v. *Fletcher*, 52 Mich. 484; *Wyckoff* v. *Runyon*, 33 N. J. L. 107; *Beall* v. *Pearre*, 12 Md. 550.

*J. Cookman Boyd* for the appellee.

McSHERRY, C. J., delivered the opinion of the Court:

In effect the contention on the record before us is, that in the Court below the case presented two opposite theories, only one of which was allowed to be considered by the jury. This is the foundation of the alleged reversible errors. The suit was

upon a promissory note. The note bears date September the 9th, 1896, and reads : " Twelve months after· date I promise to pay to the order of Mattie Adams two thousand dollars at six per cent interest, value received," and is signed by L. K. Wright. On its back the name of the appellant, Gideon P. Hopkins, is written. Hopkins was sued as a co-maker. The defense set up by him is two-fold. *First*, that he was in fact an indorser, and was understood by the payee, the maker and himself, to be such ; that the note was not presented for payment at maturity, and was not protested whereby he was released from liability. *Secondly*, that the payee and the maker Wright were co-partners in business when the note was made, and that the money was borrowed from one partner by the other for the specific purpose of being used in paying off the debts of the firm, and that it was so used to the extent of some eighteen hundred dollars ; and that inasmuch as the money was applied in extinguishment of obligations for the payment of which the payee was no less liable than the maker Wright, the former cannot recover from the latter, or what is the same thing, from the other maker Hopkins, the amount so paid ; because to the extent that the proceeds of the note were applied towards paying the firm's liabilities they were applied in extinguishing the payee's own debts, and there was consequently no consideration to support the promise of either of the makers. In answer to this contention it was insisted by the appellee that the co-partnership between herself and Wright had been dissolved before the date of the note and before the borrowing of the money, and that the money had not been borrowed for the purpose of paying off debts of the firm.

. The first ground of defense—the relation of Hopkins to the note—whether that. of co-maker or indorser—went fairly to the jury under the instructions granted, and upon this appeal we have nothing to do with that aspect of the case. The second ground of defense gave rise to the two opposite theories which have been indicated. By excluding proffered evidence, by striking out some which had been admitted subject to exception, and by rejecting several prayers which the

defendants presented for instructions to the jury, the theory upon which the appellants relied was completely eliminated. If the theory of the appellants contained a correct and an applicable legal principle, and if there was evidence which tended to support that theory the refusal to let the jury pass upon the facts, under appropriate instructions upon the law, was error. So in the end, the nine bills of exception embody the single inquiry as to whether the theory upon which the appellants insist is tenable. To answer that inquiry intelligently a brief outline of the case must now be given.

There is a distinct conflict between the chief witnesses upon two points which will be adverted to in a moment. What is beyond dispute is this : The appellee and Wright, who was her brother-in-law, were engaged in business as co-partners, whilst the appellee was a single woman. They ultimately dissolved the partnership, and Wright bought out the interest of Miss Adams for twenty-five hundred dollars, payable in ten equal annual instalments of two hundred and fifty dollars each. The appellee loaned to Wright, on the faith of the note sued on, the sum of two thousand dollars, but whether this was done before or after the dissolution is one of the disputed points, and the other is as to whether the appellee knew that the money borrowed from her was to be applied to the payment of debts for which she, as a member of the firm, was equally bound with Wright. It is immaterial which version of these contested points is the correct one as will appear later on. A written agreement of dissolution was put in evidence. It bears date September the 1st, 1896, but was not signed until October the 10th. Wright testified that the latter date was the actual date of the dissolution, though because the matter had been previously discussed the paper was dated back to September the 1st.

It is obvious, if this account be true, the partnership was in existence when the two thousand dollars were borrowed on September the 9th ; and it is equally obvious, if the dissolution took place on September the 1st, though the formal agreement was not signed until October the 10th, there was no

partnership existing as between the parties when the note of September the 9th was delivered. Wright testified that he told the appellee the two thousand dollars were to be applied to the payment of the firm's debts, and he adduced evidence tending to show that the fund had been so applied, whilst the appellee testified that he told her he needed the money in *his* business.

Of course, if the loan was made after the dissolution, and after Wright had purchased the interest of Miss Adams, the defense founded on the view that the loan was a transaction between partners in respect to partnership business must fail on the facts. But upon the hypothesis that the firm had not been dissolved until October the 10th, and therefore not until after the money had been loaned by the appellee on the note in suit, and upon the further hypothesis that the appellee knew the money was to be applied, and that it was applied to the payment of debts for which she as a member of the firm was equally liable with Wright, what legal standing, ask the appellants, would the appellee have to recover the money from Wright or from Hopkins who received no part of it and was in no way benefited by the loan?

The argument is that as both Miss Adams and Mr. Wright were, in the capacity of co-partners, bound to pay the debts due by the firm, her loan of her own money, which was not partnership assets, to him for the purpose of being used in paying those debts created no liability on his part to her; because the money was applied in satisfaction of the obligations for which both were responsible. But this is obviously fallacious. In the first place it overlooks the principle that partnership property is primarily liable for partnership debts, whilst the separate property of a partner is not liable for the firm's debts until his individual creditors are paid and the firm's assets are exhausted; and it ignores the fact that there was, when the note was given, largely more partnership assets, according to Wright's own testimony, than were needed to pay all partnership liabilities. And, in the second place, it disregards the equally well-settled principle that one partner

may make a valid contract with another which can be enforced in a Court of law.  Miss Adams was under no duty, moral or legal, to use her separate property in paying the debts of the firm so long as the firm's assets were sufficient to pay them.  Not a dollar of her money could have been touched by a firm creditor until the firm's assets had been first exhausted, and until all her individual creditors had been paid, if she had any; and hence her loan of it to Wright, even if loaned to pay the debts of the firm, was not an application of it to a use to which it could have been subjected by any legal process, so long as the firm's assets were sufficient to pay those debts.  The amount Wright agreed to pay Miss Adams for her interest in the firm's assets was less than one-half their value after these very debts had been deducted.  She thus contributed out of her share of the assets her proportion of those debts, and if she cannot recover from Wright or Hopkins the money which she loaned, and cannot recover it because Wright used that money in paying those debts, she will be deprived not only of the benefit of the contribution which she did make, but of her individual property—her money—which she loaned to her partner and Hopkins and not to the firm.

One partner may loan money to another partner and that money may be used in paying the firm's debts with the knowledge and consent of the lender, and yet the borrower will be liable to pay it back.  In the case of *Chamberlain* v. *Walker*, 10 Allen, 429, these facts appeared:  One Walker and John Chamberlain were co-partners with Henry Chamberlain and others.  The firm was subject to certain liabilities for which judgments had been recovered and executions had been issued.  Upon these executions Walker was arrested and committed to jail.  John Chamberlain, one of the members of the firm, agreed to procure the release of Walker and pay the executions if Walker would give him a note and mortgage for the amount thus advanced, and advanced not to pay Walker's own debts but to pay the debts of the firm of which John Chamberlain was a member.  Walker gave the note and the mort-

gage and John Chamberlain paid the debts.    Upon the death
of John Chamberlain this note and mortgage were assigned
by his executors to Henry Chamberlain, another member of
the firm.    Upon a proceeding by Henry Chamberlain to fore-
close the mortgage, Walker relied upon the fact that the note
was a partnership transaction, and therefore the plaintiff could
not maintain the action but must resort to a Court of equity,
and recover only what might appear to be due to him as a
final balance from the firm.    Here, then, there was distinctly
a loan of money by one member of a firm to another member
of the same firm, and the money was loaned for the express
purpose of being used in paying the debts of the firm, and
was in fact so applied.    In a brief opinion the Court said :
" When one member of a firm advances money for the benefit
of another to relieve him from his liability for the debts of the
firm, and takes his note therefor, it is to be regarded as a pri-
vate transaction between the two members, and not as a part-
nership transaction.    The other members are not liable to pay
the note and have nothing to do with it.    The right of the
payee to collect it does not depend upon the state of the part-
nership affairs, nor is it necessary to investigate them in order
to determine whether the note is due.    The assignee has the
same rights as the assignor, and the fact that he is a member
of the firm does not affect his right."    Upon the facts stated
judgment was rendered for the plaintiff.    In *Lindley on Part.*
(5th ed.), star page 566, the doctrine is thus stated :  " If one
partner gave to his co-partner a bill or note which was in such
a form as to bind, not the firm, but the partner who gave it,
he might be sued by his co-partner thereon, whatever the state
of the accounts between the two might be, and although the
bill or note in question had reference to some partnership .
transaction ; for by giving the bill or note the demand in re-
spect of which it was given was isolated from the general part-
nership account."

This loan by the appellee was made upon the joint and
several note of the appellants.    Even if it had been intended
that the funds were to be applied to the payment of the firm's

debts, the execution and delivery of the note segregated the transaction from the partnership business and made it an independent undertaking. Nothing could more strongly confirm this conclusion than the fact that Miss Adams required security on the note, and declined to lend the money until security was furnished. In view of these facts it made no difference to what use the funds were devoted. There is nothing to show that Miss Adams advanced the money to the firm ; on the contrary, every circumstance points the other way. She loaned the money to Wright on the faith of the note with the distinct promise embodied in the note that it should be paid back. Such a contract is valid between partners and a suit may be maintained on it at law, for no inquiry as to the state of the accounts between the partners is involved. There was an adequate consideration to support the promise, and as the jury have found the facts from which it followed as a legal conclusion that Hopkins was a co-maker and not an indorser his liability is indisputable. There was no error in excluding the evidence which the Baltimore City Court declined to admit ; there was no error in striking out that which had been admitted subject to exception, and there was no error in refusing to grant the prayers which were rejected, because the theory which the evidence tended to support, and upon which the prayers were constructed was not sound as applied to the facts of this case. There is consequently no valid reason assigned for a reversal of the judgment which was in favor of the appellee ; and it is accordingly affirmed.

*Judgment affirmed with costs above below.*

(Decided November 16, 1900.)