CLARA H. RISTINE, Executrix, Appellant, v. W. RUML, Appellee.

**LIMITATION OF ACTIONS:** Partnership Accounting.   When two partners settle their mutual partnership accounts to a named date, and the debtor partner executes and delivers his written due bill to cover the amount he is then owing his partner, a cause of action accrues instanter on the due bill against the maker of the due bill and in favor of the holder thereof, *even though the partnership continues;* and it matters not that the due bill is executed to the firm and by the firm indorsed to the creditor partner.

*Appeal from Linn District Court.*—RALPH OTTO, Judge.

FEBRUARY 5, 1924.

REHEARING DENIED MAY 10, 1924.

ACTION for an accounting of a partnership business.   The opinion states the facts.   From a judgment dismissing the petition, plaintiff appeals.—*Affirmed.*

*John A. Reed, John Redmond, Ralph Maclean,* and *D. C. Chase, Jr.,* for appellant.

*Deacon, Sargent & Spangler,* for appellee.

VERMILION, J.—This action is for an accounting, and has to do with the affairs of a copartnership that continued over a period of more than twenty years.   As set forth in the abstracts and arguments, it presents a very formidable array of figures. The facts, however, save in respect to the terms of the voluntary dissolution of the partnership, are not in dispute, and the case

is controlled, in the main, by a single proposition of law. This question can be presented without going into the account between the partners in any great detail.

The plaintiff and appellant is the executrix of the will of Dr. J. M. Ristine, deceased. On May 1, 1893, Dr. Ristine and Dr. Ruml, the defendant and appellee, by written agreement formed a copartnership, for the purpose of engaging in the practice of medicine. The partnership continued, under the original agreement and others subsequently entered into, until its dissolution, about May 1, 1916. The interests of the respective partners in the profits of the business were fixed by these agreements, and varied at different times; and the amounts that each drew out of the firm did not correspond with the percentages to which they were entitled.

The books of account kept by the firm were destroyed by fire in December, 1916, some eight months after the dissolution of the firm, when the building where the office was located burned. There is in existence, however, an abstract or audit of the books from May 1, 1903, to the dissolution of the firm, made by an expert accountant employed by the firm for that purpose. Copies of this accountant's audit were given to each of the partners, and those in evidence were found among Dr. Ristine's papers after his death, and were produced on the trial by the appellant. These audits or abstracts of the books show for each year, commencing May 1, 1903, to May 1, 1916, when the partnership was dissolved, the amount of money actually drawn out of the firm by each partner, and the amount to which he was entitled, according to the percentages fixed by the various contracts. It thus appears that, on May 1, 1904, Dr. Ristine had, during the preceding year, drawn out $499.42 more than he was entitled to, and Dr. Ruml less than he was entitled to by the same amount, and that Dr. Ristine was indebted to him in that amount. It appears that Dr. Ristine continued to overdraw in varying amounts up to and including the year ending May 1, 1910. Interest at 6 per cent per annum was computed on these various amounts to the last named date, and at that time he was indebted to Dr. Ruml, including interest, in the amount of $6,681.54. During the year ending May 1, 1911, Dr. Ruml drew more than he was entitled to by $549.47, and on that date this

amount was deducted from the amount of Dr. Ristine's previous overdraft and interest thereon. The balance was carried forward, and on May 1, 1912, Dr. Ruml's overdraft was again deducted, after adding interest. During the year ending May 1, 1913, Dr. Ruml again overdrew, and Dr. Ristine made two payments to him, aggregating $1,500. These payments were deducted as of the date when made, and the amount of Dr. Ruml's overdraft was deducted at the end of the year. This method was pursued during the following years, down to May 1, 1915. No further cash payments were made by Dr. Ristine. On May 1, 1916, Dr. Ristine's overdraft, including interest to that date, but with no addition or subtraction of any amount overdrawn by either of the parties during the preceding year, amounted, according to the audit, to $6,408.95, and he thus appeared to be indebted to Dr. Ruml in that amount.

On May 1, 1916, the partnership, as has been said, was dissolved. At that time a large amount was owing to the firm on account. The terms of the dissolution seem to have been agreed upon between the partners alone; and, owing to the death of Dr. Ristine and the fact that thereby Dr. Ruml became incompetent to testify to the transaction, they were difficult of competent proof. It is the claim of the appellee that he was to take the unpaid accounts of the preceding five years and have whatever could be collected on them, to apply on the $6,408.95 then due him from Dr. Ristine, as shown by the audit of the books. Dr. Ruml, after the dissolution, collected on these accounts the sum of $7,199.

Whatever might be found as to the terms of the dissolution,—whether the contention of appellee that he was to have the accounts be sustained or not,—it is plain that, so far, nothing appears to be due appellant. Dr. Ristine was, at the time of the dissolution, indebted to Dr. Ruml, as shown by the audit of the books, in the sum of $6,408.95; while his share of the amount collected on the accounts, being 40 per cent for the period covered by the accounts, according to the written agreement of the parties, would amount to but $2,879.60.

To meet this situation, and to sustain the claim that something is due from appellee, the appellant relies upon certain written instruments executed by the former.

On April 12, 1894, Dr. Ruml gave to Dr. Ristine his promissory note for $2,400, due 6 months after date, with interest at 7 per cent per annum. Numerous payments indorsed on the back of the note, it is unnecessary to set out.

On May 1, 1901, and before the annual audits began, there had been a settlement between the partners, and Dr. Ruml then executed a so-called due bill to the firm for $4,259.24, which was by the firm transferred by indorsement to Dr. Ristine. This instrument is as follows:

"C. Rapids May 1, 1901

"Due Ristine & Ruml Forty-two hundred fifty-nine 24/100 dollars on account of settlement with six per cent interest from date."

[Signed] "W. Ruml"

On the back, the following indorsement appears:

"Pay J. M. Ristine or order

[Signed] "Ristine & Ruml"

A number of payments also are indorsed on the back of this, which we do not set out.

It is the contention of the appellant that this due bill should be considered as a part of the account between the partners, and as representing the amount of Dr. Ruml's overdraft on the date when it was given; that the subsequent overdrafts of Dr. Ristine, as shown by the account, should be applied to the liquidation of the amount called for by the due bill, as was done by the parties with respect to the overdrafts during subsequent years. The same claim, in effect, is made as to the note, although it is admitted that there is no evidence that it grew out of or had anything to do with the partnership.

It is conceded by appellee that the due bill was given in settlement of the partnership account at the date of its execution, but it is claimed that, upon its transfer by the firm to Dr. Ristine, it became a mere obligation of one partner to another, and was segregated from the partnership affairs; that an action at law might have been brought upon it at any time and before the dissolution of the firm; and that it is, therefore, barred by the statute of limitations. The same claim is made in respect

to the note, except that it is not admitted that it grew out of the partnership relation. These conflicting claims present the principal question in the case.

The general rule is that an action at law cannot be maintained by one partner against another with respect to partnership transactions until there has been an accounting or settlement of the partnership affairs. *Wycoff v. Purnell,* 10 Iowa 332; *Cooper v. Nelson,* 38 Iowa 440; *Newberry v. Gibson,* 125 Iowa 575; *Simons v. Douglas' Exr.,* 189 Ky. 644 (225 S. W. 721); *Kunneke v. Mapel,* 60 O. St. 1 (53 N. E. 259); 30 Cyc. 471. See, also, a note in 21 A. L. R. 34.

An exception to this rule is recognized where the transaction out of which the liability arises has been made the subject of an express promise, or relates to a single venture, or has been segregated from the partnership affairs. *Vapereau v. Holcombe,* 122 Iowa 406; *Newberry v. Gibson,* supra; 30 Cyc. 466; note in 21 A. L. R. 57. We will have occasion to refer further to other cases so holding.

Since the due bill in question arose out of the partnership business, no right of action upon it accrued until the dissolution of the partnership, or until it was, by the act of the parties, segregated from the affairs of the partnership. That the statute of limitations did not commence to run against it until a cause of action upon it accrued, is clear upon principle. But see *Richards v. Grinnell,* 63 Iowa 44; *Broderick v. Beaupre,* 40 Minn. 379 (42 N. W. 83).

Was the due bill so segregated from the business of the partnership by the act of the parties that a cause of action upon it accrued before the dissolution of the firm? The act relied upon as effecting such a segregation was its transfer to Dr. Ristine, the claim being, as has been said, that thereafter it was an obligation of one partner to another, and, as such, an action at law might have been brought upon it, notwithstanding the continuation of the partnership. The appellant contends that there was no segregation. Aside from the claim that the facts, generally speaking, do not show a segregation, the argument is grounded upon certain propositions, the soundness of which cannot, we think, be doubted. It is well said that the due bill is not a negotiable instrument. It was executed before the Negotiable

Instrument Law was enacted, and does not come within the purview of Section 3046 of the Code, then in force. It is not payable to order or bearer, and there is nothing in its terms manifesting an intention on the part of the maker that it should be negotiable. That no demand or notice of protest was required to bind the indorser must also be conceded. *Hall v. Monohan,* 6 Iowa 216; *Billingham v. Bryan,* 10 Iowa 317; *Allison v. Hollembeak,* 138 Iowa 479; *Park v. Best,* 176 Iowa 7. It follows that the indorsement by the firm was the making of a new promise to pay to the indorsee the amount called for by the instrument, and was not a mere transfer of the paper. *Lynch v. Mead,* 99 Iowa 66; *Berry v. Gross,* 192 Iowa 300. It is further insisted, and the contention is doubtless sound, that Dr. Ristine, the transferee, could not, before the dissolution of the partnership, have sued the firm at law upon its indorsement. *Cooper v. Nelson,* supra; *Easton v. Strother,* 57 Iowa 506; *Deavenport v. Green River Dep. Bank,* 138 Ky. 352 (128 S. W. 88). It is said that, had Dr. Ristine not been a member of the firm, he could have sued either the maker or indorser, or both, at law; but that, as a member of the firm, admitting his right to sue the maker, his only right as against the indorser was to retain the instrument and use it upon a final accounting of the affairs of the firm.

The due bill was the obligation of Dr. Ruml, and after its transfer to Dr. Ristine, it was an obligation of one partner to another, upon which the partnership was also liable. The question resolves itself to this: If it be assumed that, as an obligation of one partner to another arising out of the business of the firm, but without more, there would be such a segregation of it from the business of the partnership as that a right of action upon it accrued before the dissolution of the partnership, does the fact that there was also a liability for the debt on the part of the firm that could only be enforced in an action for an accounting require a holding that it was not so segregated?

An examination of some of the cases will be of help in arriving at an answer to the query.

In *Van Ness v. Forrest,* 8 Cranch (U. S.) 30 (3 L. Ed. 478), a note was given by a member of a partnership to a copartner, designated as ''president of the company,'' for the benefit to the partnership. Chief Justice Marshall held that the proposition

that one partner can sue another on a claim growing out of the partnership in no other case than for a general balance on a stated account was, perhaps, too general, and that it did not apply to any case where a note was given for money, not to a firm, but to an individual member.

In *Kunneke v. Mapel,* supra, it was said to be a well established rule that one partner could not, in the absence of a showing that by some special agreement the particular matter had been withdrawn from the partnership account, maintain an action at law against another to recover an amount claimed by him by reason of partnership transactions until there had been a final settlement of the partnership business.

In *Hopkins v. Adey,* 92 Md. 1 (50 L. R. A. 498), it was said:

"One partner may loan money to another partner and that money may be used in paying the firm's debts with the knowledge and consent of the lender, and yet the borrower will be liable to pay it back."

In *Rondeau v. Pedesclaux,* 3 La. 510 (23 Am. Dec. 463), it was held, where the partnership agreement provided for a division of the profits before the dissolution of the partnership, that one partner could enforce a note given by another for his share of the profits, and it was said:

"That doctrine [that an action by one partner can only be brought at the close of the partnership, and then for an accounting] is very clear; but, like all other general rules, it has its exceptions; and a case like that before us is one, where, by the original contract between the members of the firm, a division of the profits was to be made before the winding up of the concern. This is the law which the parties have made for themselves, and they must abide by their agreement."

In *Davies v. Skinner,* 58 Wis. 638 (17 N. W. 427), it was said:

"Such a contract between copartners would unquestionably be valid. Why not? They severed, for the purpose of this contract, their interest in this property, which for a time was to be used for the exclusive benefit of the defendant, who was the owner of only one third, by an agreement to pay to the plaintiff the value of two thirds of its use, to which they were entitled.

* * * Partners can, at any time they see fit, sever their interests by contract, and hold each other to strictly common-law remedies. It would be the same as a balance struck on settlement, or a personal promise to pay.''

*Bright v. Carter,* 117 Wis. 631 (94 N. W. 645), was an action to recover from the other partners their respective shares of advances made in promoting a partnership business under an express agreement to repay, and it was held that plaintiffs were entitled to recover ''regardless of their partnership relation or the state of their firm accounts.''

*Mitchell v. Wells,* 54 Mich. 127 (19 N. W. 777), was an action on a note given by one party to another for money that went to make up the capital of the partnership. The court said:

''There never was any difficulty in bringing suit by one or more partners against another on his covenants.''

In *Sturges v. Swift,* 32 Miss. 239, it was said:

''One partner may sue his copartner, at law, on a note, obligation, or even an account stated, ascertaining the sum due. The object of going into equity is to get an account concerning matters about which the parties are unable to agree; but to hold that, when they have agreed, and given a legal shape to their contracts, such contracts cannot be enforced at law, would be equivalent to holding that either the subject was of such a nature, or the relation of the parties such, that the law would not permit them to contract.''

In *Berry v. DeBruyn,* 77 Ill. App. 359, one partner had given another partner a note for services rendered the partnership. The court allowed a recovery, and followed the reasoning of the case of *Sturges v. Swift,* supra.

In *Crater v. Bininger,* 45 N. Y. 545, it was said that an action will not lie by one member of a partnership against another on an implied promise, but that one partner can maintain an action against his copartner upon an express promise, though connected with the partnership business.

In *Carpenter v. Greenop,* 74 Mich. 664 (42 N. W. 276, 4 L. R. A. 241), it was held that the indorsee after maturity of a note given by a partnership to one member of the firm for money loaned could maintain an action thereon, without regard to

whether an accounting had been had between the payee and the partnership.

In *Sprout v. Crowley,* 30 Wis. 187, this language was used:

"But where there is an express agreement by one partner to repay to the other his share of advances made by the latter on account of the partnership business, the amount of such share becomes thereby the debt of the partner who has thus agreed to pay the same, which may be recovered in an action brought directly therefor, without any regard to the partnership relation existing between the parties or the state of their firm accounts."

In *Wilson v. Wilson,* 26 Ore. 251 (38 Pac. 185), it was held that an action at law was maintainable by one partner against another upon a note involving particular items or transactions of the partnership business, on the ground that the giving of the note was a separation of the particular matter from the general partnership account.

In many of these cases the debt was also the debt of the partnership, or was in fact owed to the partnership; but neither circumstance served to deprive the one partner of the right to enforce the obligation against the other in an action at law.

It is a fair inference that the due bill, which, it is conceded, represented the amount by which Dr. Ruml was, at its date, overdrawn was, as a part of the same transaction, assigned to Dr. Ristine, who, at the time, had drawn from the firm that much less than he was entitled to. The ultimate thing to be accomplished was the equalizing, as between the two partners, of the amounts they had respectively drawn, to correspond with the percentages of the profits of the business to which they were entitled. This the due bill, being the obligation of Dr. Ruml, did, when it reached the hands of Dr. Ristine. The fact that, in the course of the method adopted to effect this, the partnership became liable as an indorser, ought not to defeat the evident purpose of the parties to sever the obligation of one partner to the other from the business and accounts of the partnership. That this was their purpose is manifest from the fact that the due bill is not referred to, or the amount of it included in the account, although the holder of the obligation thereafter became largely indebted to the maker on the account, and made cash payments on such indebtedness, which were credited to him

thereon. The case falls within the rule that where, by agreement of the parties, one partner has entered into an obligation to a copartner, even though the transaction grows out of the partnership business, it is so far severed or segregated therefrom that an action at law may be brought upon it before the dissolution of the partnership. It follows that the statute of limitations had run against the due bill before the dissolution of the partnership or the institution of this action.

Some claim is made that the due bill is not such an instrument as would sustain an action to recover the amount acknowledged by its terms to be due. There is no merit in the contention. Code Section 3046; *Sheldon v. Heaton*, 34 N. Y. Supp. 856; *Schmitz v. Hawkeye Gold Mining Co.*, 8 S. D. 544 (67 N. W. 618) ; 19 Corpus Juris 823.

Much of what has been said is applicable to the claim that the note set out above should be considered in the accounting of the partnership business. Moreover, there is no evidence that it grew out of the partnership relation or had anything to do with the partnership business. All authorities agree that, in such a situation, an action at law may be maintained by one partner against another. Any action upon the note was clearly barred.

In the view taken of the case, it is unnecessary to consider the claim that the annual audits constituted accounts stated, or to determine what the terms of the dissolution of the partnership were. Our holding being that the due bill had been segregated from the partnership business, and was barred by the statute of limitations, there could be nothing due the appellant in any event. The appellee is asking no affirmative relief. The judgment is—*Affirmed.*

ARTHUR, C. J., STEVENS and DE GRAFF, JJ., concur.